UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RULLEY HOTARD** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 23-6003** |
| | * | |
| **AEGIS SECURITY INSURANCE COMPANY** | * | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court is a Motion to Enforce Settlement filed by Defendant Aegis Security Insurance Company ("Aegis"). R. Doc. 22. Plaintiff Rulley Hotard ("Plaintiff") did not oppose or otherwise respond to the motion. Considering the record, briefing, and applicable law, the Court now rules as follows.

### I.   BACKGROUND & PRESENT MOTION

This case arises out of an insurance contract dispute related to damages sustained by Plaintiff's property during Hurricane Ida. Doc. 1. On September 16, 2024, the parties successfully reached an agreement to settle Plaintiff's claims via email. R. Doc. 22-5. The next week, the parties jointly filed a "Notice of Settlement" in the record. R. Doc. 20. The notice stated that "the parties have reached a settlement in this matter," and that they would submit "a motion to dismiss following execution of the settlement documents." *Id.* Accordingly, the Court issued an order dismissing the action without prejudice but "retaining jurisdiction for all purposes, including enforcing the settlement agreement entered into by the parties." R. Doc. 21. Aegis then sent a settlement check to Plaintiff's counsel. R. Docs. 22-7, 22-8. On October 18, 2024, counsel for Aegis emailed Plaintiff's counsel a copy of a Confidential Receipt, Release, and Indemnity Agreement (the "Release") formally releasing Plaintiff's claims and an Order for Dismissal with

Prejudice to be signed by the Plaintiff. R. Doc. 22-6. By November of 2024, Plaintiff still had not signed and returned the Release, but Plaintiff's counsel assured Aegis that the matter would be handled as soon as possible. R. Doc. 22-1 at 2. Counsel for Aegis last heard from Plaintiff's counsel on December 10, 2024 via email, in which they claimed that they were having trouble reaching Plaintiff to secure his signature. R. Doc. 24. To this date, Aegis has still not received the executed settlement documents and thus moved for an order to enforce the parties' settlement agreement as well as attorney's fees and costs for having to file its motion. R. Doc. 22.

On December 23, 2024, the Court ordered Plaintiff's Counsel Chinwe Onyenekwu, Dorothy L. Tarver, Mark Ladd, Brian Houghtaling, Michal Harris, Tucker McGill, and Wilfred Denis, III to appear in person and show cause as to why Aegis's motion should not be granted, and attorney's fees and costs awarded. R. Doc. 23. The show cause hearing was set for 9:00 A.M. on Tuesday, January 7, 2025. Counsel for Aegis appeared at the scheduled time, but no one appeared on behalf of Plaintiff as ordered. The Court called the case and admonished Plaintiff's counsel on the record in light of their duties as "officers of the court" to both comply with court orders and advocate for their client. As of the date of this order, Plaintiff's counsel have still not appeared or made any attempt to explain their failure to finalize the settlement agreement or their failure to appear.

**II.   LAW & ANALYSIS**

Aegis's Motion to Enforce Settlement presents two separate issues that the Court must address: (1) jurisdiction and (2) the enforceability of the parties' settlement agreement. The Court takes each in turn.

**1.   The Court Has Jurisdiction Over the Parties' Settlement Agreement.**

As an initial matter, the Court must determine whether it has jurisdiction to enforce the alleged settlement agreement between Plaintiff and Aegis. Federal courts are courts of limited jurisdiction and possess power only over those cases authorized by the United States Constitution. *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). The Supreme Court and the Fifth Circuit have both explicitly held that there is no provision of law that provides federal courts with jurisdiction over disputes arising out of agreements that produce stipulations of dismissal. *Id.*; *Langley v. Jackson State University*, 14 F.3d 1070, 1074 (5th Cir. 1994). The Supreme Court has also rejected the notion that federal courts can exercise ancillary jurisdiction over such cases. *Kokkonen*, 511 U.S. at 379-80. However, the Supreme Court in *Kokkonen v. Guardian Life Insurance Company of America* has recognized three scenarios where a federal district court does have the power to enforce a settlement agreement in a case that has been dismissed. *Id.* First, the district court may reopen a case to enforce the settlement agreement if its terms are stated in the order of dismissal. *Id.* at 381. Second, a district court may reopen a case to enforce a settlement agreement if the order of dismissal contains language expressly retaining jurisdiction over the enforcement of the settlement agreement. *Id.* at 382. Third, a district court may reopen a case to enforce the settlement agreement if there is an independent basis for jurisdiction. *Id.*

Here, the Court may exercise jurisdiction to enforce the settlement agreement under the second scenario identified in *Kokkonen*. The dismissal in this case clearly states that the Court retains jurisdiction over the enforcement of the settlement agreement between Plaintiff and Aegis. R. Doc. 21. Furthermore, there is no specific time limit as to when this jurisdiction ceases that would make Aegis's motion untimely. *See Billiot v. Bankers Specialty Ins. Co.*, 2024 WL 3584403, at *3-4 (E.D. La. Mar. 19, 2024) (finding defendant's motion to enforce settlement was untimely

because court retained jurisdiction for only sixty days after entry of dismissal). Accordingly, the Court is not precluded from deciding Aegis's motion and will address the merits of its' argument.

2. **The Settlement Agreement Between Plaintiff and Aegis is Valid and Enforceable.**

Next, the Court must determine whether the Plaintiff and Aegis did, in fact, reach an enforceable settlement agreement. The Fifth Circuit has recognized that "a district court has inherent power to recognize, encourage, and when necessary to enforce settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020). A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement, so long as none of the substantive rights and liabilities of the parties derive from federal law. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 266 (5th Cir. 1995). Therefore, Louisiana law must govern in the instant matter. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Louisiana Civil Code defines a settlement, or "compromise" agreement as it is referred to under Louisiana law, as a "contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. Civ. Code art. 3071. "There are two essential elements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Preston Law Firm, LLC v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 390 (5th Cir. 2010) (quoting *Klebanoff v. Haberle*, 43,102 (La. App. 2 Cir. 3/19/08), 978 So. 2d 598, 602). The Louisiana Supreme Court has explained that reciprocal concessions in adjusting the differences between the parties is the civil counterpart of the common law requirement of consideration. *Rivett v. State Farm Fire & Casualty Co.*, 508 So. 2d 1356, 1359 (La. 1987). Additionally, the agreement must "be made in writing or recited in open court" to be enforceable. La Civ. Code art. 3072. "Emails can qualify as the signed writings needed to form contracts."

*Preston Law Firm*, 622 F.3d at 391 (citing, among others, La. R.S. 9:2607). Moreover, Louisiana law does not require all terms of a settlement agreement to be "contained in one document." *Parich v. State Farm Mut. Ins. Co.*, 919 F.2d 906, 913 (5th Cir. 1990). Instead, "multiple documents which, when read together, outline the obligations of each party and evidence each party's acquiescence in the agreement may effect a valid compromise." *Id.*

Here, a review of the parties' email exchanges indicates that an enforceable compromise in writing was reached. More specifically, counsel for Aegis asked if Plaintiff agreed to its "terms of settlement," to which Plaintiff's counsel replied "yes." R. Doc. 22-4. The emails further evince that the terms of the agreement required Aegis to send a settlement check in exchange for Plaintiff signing the Release and Motion to Dismiss in order to clear Aegis of any liability. R. Docs. 22-5, 22-6, 22-7, 22-8. In other words, these emails contain reciprocal concessions and show a mutual intention of ending the litigation. While the Court notes that Plaintiff's counsel, and not Plaintiff, ultimately accepted the settlement offer, this fact is of no moment because "attorneys are presumed to have authority to negotiate settlement agreements for their clients." *Villanueva v. CNA Ins. Cos.*, 868 F.2d 684, 686 (5th Cir. 1989). Without evidence that Plaintiff's counsel acted in contravention of Plaintiff's clear and express consent, the Court will not presume acceptance was faulty due to a lack of proper authorization. *See Melerine v. State Farm Ins. Co.*, No. 06-9568, 2008 WL 506093, at *2 (E.D. La. Feb. 20, 2008) (citing *Tran v. Allstate Ins. Co.*, 2001-0675 (La. App. 4 Cir. 12/27/01), 806 So. 2d 103, 106). As a result, the Court concludes that the parties reached a valid settlement agreement under Louisiana law and finds that a dismissal with prejudice is the most appropriate remedy to enforce the parties' settlement agreement. The Court's decision will both allow Plaintiff to keep the settlement check already received and absolve Aegis of any further liability as contemplated by the parties in the unexecuted Release.

### III.     CONCLUSION

For the foregoing reasons;

**IT IS HEREBY ORDERED** that Defendant Aegis's Motion to Enforce Settlement, R. Doc. 22, is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that attorney's fees and costs associated with this motion and counsel for Aegis's appearance at the show cause hearing are to be awarded in the amount of $500.00 by check. The Court finds that this outcome is warranted pursuant to its inherent authority to sanction vexatious and egregious conduct, such as that exhibited by Plaintiff's counsel in failing to comply with this Court's show cause order and generally being non-responsive. *Tacon Mech. Contractors, Inc. v. Aetna Cas. & Sur. Co.*, 65 F.3d 486, 489 (5th Cir. 1995).

New Orleans, Louisiana, this 8th day of January, 2025.

_____
UNITED STATES DISTRICT JUDGE